**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

**CHAREES HARRIS,**                                              **CASE NO.**

     **Plaintiff,**

**v.**

**TROY E. MEINK, in his official capacity**
**as SECRETARY of the AIR FORCE,**

     **Defendant.**
_____/

## COMPLAINT

Plaintiff, CHAREES HARRIS, hereby sues Defendant, TROY E. MEINK, in his official capacity as SECRETARY of the AIR FORCE, and alleges:

## JURISDICTION

1. This is an action brought under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq, at it applied to employment discrimination in federal sector employment.

2. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States.

3. This action involves claims which are, individually, in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

## THE PARTIES

4. At all times pertinent hereto, Plaintiff CHAREES HARRIS has been a resident of the State of Florida and an employee of the United States Air Force.

5. Plaintiff is a member of protected classes based on race, color, and national origin, and she engaged in protected activity by opposing unlawful employment practices, after which she was subjected to retaliation.

6. Defendant TROY E. MEINK, in his official capacity as Secretary of the Air Force, is Plaintiff's employer within the meaning of Title VII, and is responsible for the acts and omissions of supervisory and managerial personnel acting within the scope of their employment.

## CONDITIONS PRECEDENT

7. Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

8. Plaintiff, an African American of Sioux ancestry, began her employment as a Custodial Worker with Defendant at Tyndall Air Force Base on or about July 29, 2024, and was terminated on or about January 28, 2025.

9. Plaintiff was a loyal and dedicated employee.

10. During her employment with Defendant, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and was held to

2

a different standard because of her race, national origin and color, and because she reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

11. The disparate treatment and retaliation came at the hands of specifically but not limited to Immediate Supervisor Evelyn Cabrera, Hispanic, of the 325th Force Support Squadron (FSS), Lead Supervisor Cecelia Woods, of the 325th FSS, Lead Housekeeper Kathleen Whigham, of the 325th FSS, and Laborer Robert Pyka, Caucasian, of the 325th FSS.

12. On August 1, 2024, Plaintiff reported to work and was assigned to train with Whigham. Plaintiff introduced herself, showed her name badge, and advised Whigham that she was also comfortable being called by her nickname, "Reese." Whigham acknowledged and agreed.

13. Whigham instructed Plaintiff to follow her to the Temporary Lodging Facility area and showed Plaintiff the employee break room and linen rooms. She then led Plaintiff through multiple housing units and provided basic orientation and task explanations.

14. While walking to one of the units, Whigham told Plaintiff that she was not supposed to be on her phone. Plaintiff advised that she was not using the phone and was only carrying it. Whigham nonetheless instructed Plaintiff to put the phone away, which Plaintiff did.

3

15.    In a subsequent unit that same day, Plaintiff observed another Custodial Worker using FaceTime on her phone. Whigham did not instruct that employee to stop using her phone and instead joined the interaction.

16.    Whigham later informed another employee that Plaintiff would be assigned to work with Custodial Worker David Laguna, and made a remark that Laguna was "slow," followed by laughter from Whigham and Custodial Worker Brooke Bell. Whigham then attempted to minimize the remark by stating that she did not mean it in that way.

17.    When Plaintiff arrived at Laguna's assigned unit, Whigham stated to Plaintiff, "I'll let you clean the kitchen," in a dismissive manner. Plaintiff was taken aback by the tone and pointed to her name badge to reintroduce herself. Whigham walked out of the unit without further instruction.

18.    Plaintiff completed the kitchen cleaning task as assigned and then sat down while waiting for further instruction, as all assigned tasks had been completed. Whigham returned and angrily yelled at Plaintiff for sitting, stating that she was supposed to be working. Plaintiff explained that she had completed the kitchen and had not been given additional tasks.

19.    Whigham responded by slamming a toaster onto the counter and stating that Plaintiff needed to clean it. Plaintiff did not respond verbally, stepped outside

4

briefly to de-escalate the situation, and then returned to clean the mess Whigham left.

20. During her afternoon break, Plaintiff went to speak with Woods and reported the manner in which Whigham had treated her throughout the day and the week.

21. After returning from break, Plaintiff was informed by other housekeepers that the work was complete. Plaintiff went to the employee break room and sat at a desk reading employee communications and training bulletins.

22. Whigham entered the break room and began yelling for General Laborers to bring her items. Whigham then approached Plaintiff, tapped on the desk, addressed Plaintiff as "you," and stated that Plaintiff needed to be helping. Plaintiff again pointed to her name badge and asked Whigham to call her by her name and to clarify what task Plaintiff was supposed to perform.

23. Whigham responded by yelling at Plaintiff, stating that Plaintiff had a "bad attitude," and threatened to call Woods. Whigham instructed Plaintiff to sit. Plaintiff advised Whigham that the harassing behavior was being recorded and asked Whigham not to fabricate statements.

24. Whigham then called Woods and stated Plaintiff's name, reporting that Plaintiff's attitude was bad.

5

25.     A group of coworkers gathered around Whigham and appeared visibly upset. One coworker stated that recording was illegal. The group of employees became agitated and moved toward the break room area where Plaintiff was located.

26.     Fearing for her safety, Plaintiff immediately left the building and went to her vehicle.

27.     Following the incident, Plaintiff submitted a formal complaint regarding Whigham's conduct.

28.     Plaintiff subsequently met with Woods' superior, Lodging Facilities Manager Rewa Horne.  During that meeting, Horne advised Plaintiff that she had been treated in that manner because of her race and stated that Plaintiff was the first African American housekeeper employed at the facility since Horne had been managing.

29.     During the same meeting, Horne stated that Woods "doesn't get it," referring to the disparate treatment and discrimination African Americans face in the workplace. Horne hugged Plaintiff, advised her not to worry, stated that she would address the matter with Woods, and told Plaintiff not to change who she was. Plaintiff further reported to Horne that Pyka had made statements that he could not and did not want to work every weekend and that, if required to do so, he would either kill someone else or himself due to childcare responsibilities. Plaintiff advised Horne that these statements made her uncomfortable and caused her concern for her

6

safety, as she has children and wanted to return home safely to them. Despite Plaintiff's report of race-based discriminatory treatment and workplace safety concerns to management, Defendant failed to take prompt, reasonable, and effective remedial action.

30.    After that meeting, Plaintiff was subjected to retaliation and increasingly hostile working conditions.

31.    On or about October 14-18, 2024, Plaintiff was subjected to discriminatory and harassing comments by coworker Denise Romine, Caucasian, regarding Plaintiff's hair. Romine told Plaintiff how she preferred Plaintiff to wear her hair and stated that she liked it better when Plaintiff wore hair extensions. Plaintiff advised Romine that she is African American and that Romine's comments were inappropriate and harassing. Romine responded by stating that she "could never be African American" and made comments expressing pity for Black women. Romine continued to make unsolicited and inappropriate remarks regarding Plaintiff's hair.

32.    During Plaintiff's first week of employment, on or about August 1–2, 2024, Plaintiff overheard Pyka make statements to another employee, Lead Housekeeper Myonghwa Jester, Asian, regarding his work schedule. Pyka stated that he could not and did not want to work every weekend and that, if required to do so, he would either kill someone else or himself due to childcare responsibilities.

Plaintiff reported Pyka's statements to Horne and to Human Resources, advised that the statements made her uncomfortable, and expressed concern for her safety, as she has children and wanted to make it home safely to them.

33. Because of the incidents set forth above, on October 6, 2024, Plaintiff sought EEO counseling in the informal stage.

34. Plaintiff witnessed Pyka on or about October 7, 2024, laugh and make a mocking joke about Columbus Day, stating that "we Europeans" came to "kill the Native Americans" and "take all their land." Pyka also mentioned, referring to the Europeans, that they need to go back where they came from.

35. At or about the same time, Plaintiff overheard Custodial Workers LaDonna Chafin, Caucasian, Joel Pic, Caucasian, and Rebecca Suarez, Caucasian, make racially derogatory remarks concerning Native Americans. The statements included demeaning and insensitive comments, including references to killing that were treated as humorous, which Plaintiff found offensive and disturbing due to her Native American heritage, including Sioux ancestry.

36. Plaintiff reported the racially derogatory remarks to Custodial Worker Linda Vonberg, Caucasian, and thereafter to Woods. In response, Woods stated, "So what?! They can talk about history." Plaintiff explained that while discussion of history was appropriate, the remarks at issue were racially derogatory, involved laughter about killing, and were deeply offensive given Plaintiff's Native American

heritage. Despite Plaintiff's report and explanation, the Defendant took no corrective action, the employees were not reprimanded, and the racially derogatory conduct continued.

37.    Plaintiff was treated less favorably than similarly situated Caucasian, American national origin, employees, including Chafin, Pic, Suarez, and Pyka. Despite Plaintiff's reports that these employees made racially derogatory remarks and engaged in offensive conduct, including demeaning statements about Native Americans and statements involving violence, none of the Caucasian employees of American national origin, were disciplined, counseled, or reprimanded. By contrast, Plaintiff's complaints were dismissed by Woods, who minimized the conduct and took no corrective action, thereby permitting the discriminatory behavior to continue.

38.    Because of the actions set forth above, on December 19, 2024, Plaintiff filed her formal EEO complaint after the issues raised in the informal EEO process were not resolved.

39.    Thirty nine days later, on January 27, 2025, Plaintiff was terminated while still on probation after enduring harassment essentially continuing throughout her employment with Defendant.

40.    Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the statutes referenced above.

## COUNT I
## RACE DISCRIMINATION

41.    Paragraphs 1 through 40 are re-alleged and incorporated herein by reference.

42.    Defendant discriminated against Plaintiff on the basis of race and color in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This is a claim for disparate treatment.

43.    Plaintiff was subjected to disparate treatment and adverse employment actions, including termination, because of her race and color.

44.    Similarly situated non-African American employees were treated more favorably, and Plaintiff's complaints of racially discriminatory conduct were dismissed, minimized, or ignored.

45.    Defendant knew or should have known of the discriminatory conduct and failed to take prompt, reasonable, and effective remedial action.

46.    Defendant's acts and omissions affected the terms, conditions, and privileges of Plaintiff's employment.

47.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief.

## COUNT II
## NATIONAL ORIGIN DISCRIMINATION

48.    Paragraphs 1 through 40 are re-alleged and incorporated herein by reference.

49.    This is an action against Defendant for discrimination based upon National Origin brought under 42 U.S.C. §2000e et seq. This is a disparate treatment claim.

50.    Plaintiff has been the victim of discrimination on the basis of her national origin in that she was treated differently than similarly situated American born/descended employees of Defendant and has been subject to hostility and poor treatment on the basis, at least in part, of her national origin.

51.     Defendant is liable for the differential treatment and hostility towards Plaintiff because Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions

11

and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

52.     Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

53.     Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

54.     In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a national origin-based nature and in violation of the laws set forth herein.

55.     The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant.

56.     The events set forth herein led, at least in part, to Plaintiff's termination.

57.     Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon national origin in violation of 42 U.S.C. §2000e et seq.

58.     As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of

enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief.

## COUNT III
## COLOR DISCRIMINATION

59.    Paragraphs 1 through 40 are re-alleged and incorporated herein by reference.

60.    Plaintiff is African American and has a protected characteristic based on **color**, including her skin tone and physical characteristics historically associated with African Americans. This is a disparate treatment claim.

61.    During her employment, Plaintiff was subjected to disparate treatment because of her color, including heightened scrutiny, dismissive and demeaning treatment, racially charged comments, and the minimization or disregard of her complaints, while similarly situated lighter-skinned or non-African American employees were treated more favorably.

62.    Defendant, through its supervisors and agents, knew or should have known of the color-based discriminatory conduct directed at Plaintiff and failed to take prompt, reasonable, and effective remedial action to prevent or correct it.

63.    Defendant's acts and omissions affected the terms, conditions, and privileges of Plaintiff's employment and constitute unlawful discrimination based

on color in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

64.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief.

## COUNT III
## HOSTILE WORK ENVIRONMENT

65.    Paragraphs 1 through 40 are realleged and incorporated herein by reference.

66.    This is an action against Defendant for discrimination based upon race, national origin and color.  This is a claim for hostile work environment.

67.    Plaintiff has been the victim of a hostile work environment based on her race, national origin and color.  She belongs to a protected group as she is black, of Sioux national origin and her color.  She was subject to unwelcome harassment during her employment with Defendant as set forth above.  The harassment was based on her protected characteristics, i.e., her race, national origin and color.  The harassment was sufficiently severe or pervasive to alter the conditions of her

14

employment and the Defendant is responsible for the hostile work environment. After reporting the hostile work environment, Defendant did nothing but allow the harassment to continue. Plaintiff was ultimately fired but the harassment continued throughout her employment.

68. Defendant is liable for the hostility towards Plaintiff and her demotion because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff but, in fact, exacerbated the harm to Plaintiff by exiling her and then firing her. Furthermore, Defendant knowingly condoned and ratified the hostile environment as more fully set forth above because it allowed it and participated in same.

69. Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

70. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were based on Plaintiff's race, national origin and color and in violation of the laws set forth herein. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to adverse actions

15

against Plaintiff and to actions that adversely affected Plaintiff's to perform her duties, as set forth above.

71. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race, national origin and color.

72. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

## COUNT IV
## RETALIATION

73. Paragraphs 1 through 40 are re-alleged incorporated herein by reference.

74. This is an action against Defendant for unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16.

75. Defendant is an employer as that term is used under the applicable statutes referenced above.

76. The foregoing unlawful actions by Defendant were purposeful.

16

77.    Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and has been the victim of retaliation thereafter.

78.    The events set forth herein have led, at least in part, to adverse actions against Plaintiff.

79.    Plaintiff is a member of a protected class because she reported unlawful employment practices and has been the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

80.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive/equitable relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's

obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)    enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)    enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)    enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)    award Plaintiff interest where appropriate; and

(g)    grant such other further relief as being just and proper under the circumstances.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone: (850) 383-4800
Facsimile: (850) 383-4801
Marie@mattoxlaw.com
Secondary emails:
marlene@mattoxlaw.com
michelle@mattoxlaw.com
discovery@mattoxlaw.com

ATTORNEYS FOR PLAINTIFF